IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GUADALUPE PADILLA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | A-06-CA-033  SS |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Dept. of Criminal Justice-Correctional | § | |
| Institutions Division,[1] | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE SAM SPARKS
        UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

Before the Court are Petitioner's Petition for Writ of Habeas Corpus (Clerk's Dkt. #1), Respondent's Answer with Brief in Support (Clerk's Dkt. #20) and Traverse (Petitioner's First Response to Respondent's Answer to Petitioner's § 2254 Habeas Corpus Petition) (Clerk's Dkt. #24).  For the reasons set forth below, Petitioner's application for writ of habeas corpus should be denied.

## I.  PROCEDURAL HISTORY

Petitioner Guadalupe Padilla ("Padilla") was convicted by a jury of aggravated sexual assault of a child and indecency with a child, enhanced by a prior felony conviction.  The jury

---

The previous named respondent in this action was Doug Dretke.  On June 1, 2006, Nathaniel Quarterman succeeded Dretke as Director of the Texas Department of Criminal Justice, Correctional Institutions Division. Under Rule 25(d)(1) of the Federal Rules of Civil Procedure, Quarterman is automatically substituted as a party.

assessed punishment at thirty-seven years confinement on the aggravated sexual assault of a child charge and fifteen years confinement on the indecency with a child charge. Petitioner's convictions were affirmed on direct appeal. *Padilla v. State*, No. 03-02-00345-CR, 2003 WL 21401256 (Tex. App.–Austin Jun. 19, 2003, pet ref'd). Padilla twice sought state post-conviction relief in applications for writ of habeas corpus.[2] The Texas Court of Criminal Appeals denied habeas relief on both applications. *Ex parte Padilla*, No. 61,391-02 (Tex. Crim. App. Aug. 17, 2005); *Ex parte Padilla*, No. 61,391-03 (Tex. Crim. App. Mar. 29, 2006). Padilla then filed this action in federal court.

## II. FACTUAL BACKGROUND

In reviewing Petitioner's conviction, the Texas appellate court summarized the factual background as follows:

In October 1994, appellant was on parole from a prison sentence for burglary and living in Austin with Gina Gomez and her eleven-year-old daughter. On the night of October 22, while Gomez was at work, appellant sexually assaulted the girl. When Gomez got home, the girl told her what had happened. Gomez confronted appellant and told him she was going to call the police. Appellant left the house that night never to return. Based on Gomez's complaint, a municipal court warrant for appellant's arrest was issued on November 4, 1994. The municipal court warrant was superseded by a district court capias issued after a grand jury indicted appellant for aggravated sexual assault on June 6, 1995.

On December 9, 1994, appellant was arrested in San Antonio for parole violations. Documents in the record show that appellant was accused of violating the conditions of his parole by failing to report a change of address and by committing the aggravated sexual assault at issue. Apparently, no one in Austin was notified of the arrest. Appellant's parole was revoked in February 1995 after he waived a hearing, and he was returned to prison. Between February 1995 and May 2000, appellant was released on parole three more times. On one occasion, appellant was paroled to a residential facility for sex offenders because of the pending sexual assault charge. Following each release, appellant committed new parole violations resulting in his arrest and reincarceration. Although both the parole board and the institutional division were aware of the pending sexual assault charge, police and prosecutors in Austin were never informed that appellant was in custody. For their

_____

Petitioner maintains he did not file two separate applications. Rather, he states his second submission was intended to be a supplement/addendum. The Texas Court of Criminal Appeals, however, treated the submissions as two separate applications.

part, prosecutors appear to have been unaware of appellant's whereabouts and never placed a detainer on appellant while he was in prison. Finally, on May 3, 2000, while appellant was in custody in San Antonio on a parole violation warrant, the 1995 capias was executed and he was returned to Austin.

An attorney was appointed to represent appellant on May 5, 2000. Appellant was released on bond in November 2000. At a time not clear from the record, appellant was deemed not to be indigent and the appointed attorney ceased to represent him. Appellant never hired counsel. Appellant was rearrested in May 2001 after his bond was increased, and a new attorney was appointed to represent him. On November 16, 2002, appellant's new counsel filed a motion to dismiss for want of a speedy trial. By that time, there had been approximately twenty-five agreed resettings of appellant's court case. The dismissal motion was overruled on January 25, 2002, following a hearing. Appellant's trial began three days later.

*Padilla*, No. 03-02-00345-CR, 2003 WL 21401256, at *1.

### III. ISSUES RAISED

Padilla raises ten overarching issues in twenty four grounds for relief. He contends: (1) the arrest warrant was not supported by probable cause (Grounds 1-2); (2) the indictment was fatally defective (Grounds 3-4, 7); (3) his right to a speedy trial was violated (Grounds 5, 8-9); (4) certain records are terminally defective (Ground 6); (5) he was subject to official misconduct (Grounds 11-12); (6) he received ineffective assistance of counsel (Grounds 10, 21); (7) his state habeas applications were not timely and fully considered (Grounds 13-15, 23-24); (8) a variety of evidence was improperly admitted (Ground 16-19); (9) the jury charge and verdict form were defective; and (10) the prosecutor engaged in improper jury argument (Ground 22).

### IV. STANDARD OF REVIEW

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective Death Penalty Act of 1996. *See* ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT, Pub. L. 104-132, 110 Stat. 1214 (1996) ("AEDPA"). Under the AEDPA, a habeas petitioner may not obtain relief with respect to any claim that was adjudicated on the merits in a state court proceeding unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision

3

that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413, 120 S. Ct. 1495, 1523 (2000). An unreasonable application of clearly established federal law is one in which "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. A state court decision is entitled to deference unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2001). A presumption of correctness attaches to factual determinations made by a state court. 28 U.S.C. § 2254(e)(1). A habeas petitioner must rebut this presumption by clear and convincing evidence. *Id*.; *Ladd v. Cockrell*, 311 F.3d 349, 352 (5th Cir. 2002).

## V. ANALYSIS

### A. Lack of Probable Cause (Grounds 1-2)

In two related claims, Padilla contends the arrest warrant was not supported by probable cause because the supporting police report was inadequate. He contends the report did not contain an affidavit from the alleged victim, the only one with personal knowledge of any possible crime. Petitioner further asserts the arrest warrant was improperly dated by the judge. Respondent counters that any Fourth Amendment claims are barred under the *Stone* doctrine.

#### 1. Standard of Review

A federal court may not grant habeas relief based on a Fourth Amendment violation where the state has provided an opportunity for full and fair litigation of the issue. *Stone v. Powell,* 428

U.S. 465, 493-95, 96 S. Ct. 3037, 3052-53 (1976); *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002). This rule applies to all claims arising under the Fourth Amendment. *See, e.g. Janecka,* 301 F.3d at 320 (search and seizure); *Jones v. Johnson*, 171 F.3d 270, 277-78 (5th Cir. 1999) (arrest). A petitioner must plead and prove the state court proceeding was inadequate in order to obtain post-conviction relief in federal court. *Davis v. Blackburn,* 803 F.2d 1371, 1372 (5th Cir. 1986).

### 2. Discussion

Petitioner admits both he and his counsel were able to file numerous motions seeking discovery and inspection in the trial court. He further concedes he raised numerous issues in his direct appeal. (Pet. Trav. at 5-6). Padilla's complaint essentially is that he was denied a full and fair opportunity to litigate because his motions and requests were denied. (*Id*.). Petitioner's attack on the validity of those rulings is not, however, sufficient to overcome the bar imposed by *Stone*. *See Janecka,* 301 F.3d at 320 (petitioner's disagreement with trial court's decision to overrule objection to search not sufficient to overcome *Stone* bar). It is apparent Padilla was afforded a full and fair opportunity to litigate his Fourth Amendment issues in state court. He is therefore barred from seeking federal habeas relief on these grounds. *See Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978) ("An 'opportunity for full and fair litigation' means just that: an opportunity. If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, Stone v. Powell bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes.").

### B. Defective Indictment (Grounds 3-4, 7)

Petitioner next asserts the indictment was invalid. He contends it fails to meet constitutional requirements because it arises from the invalid arrest warrant. Petitioner further asserts the indictment was "terminated" in October 1995, rendering his subsequent prosecution a violation of his protection against double jeopardy. He additionally claims, because the notice of indictment

was not issued until June 2000, the indictment was rendered invalid as outside the statute of limitations.

The sufficiency of an indictment is a matter of state law. *Johnson v. Puckett,* 930 F.2d 445, 447 (5th Cir. 1991); *Branch v. Estelle,* 631 F.2d 1229, 1233 (5th Cir. 1980). A petitioner is not entitled to federal habeas relief unless the indictment is so defective as to deprive the state court of jurisdiction. *McKay v. Collins,* 12 F.3d 66, 68 (5th Cir. 1994); *Branch,* 631 F.2d at 1233. An indictment setting forth the elements of the offense in language clear enough to enable the defendant to plead a bar in jeopardy does not raise a jurisdictional defect. *Alexander v. McCotter,* 775 F.2d 595, 599 (5th Cir.1985).

Padilla's first attack on the validity of the indictment is again based on alleged Fourth Amendment violations. The undersigned has, however, previously found such claims are barred from consideration in this proceeding. They need not be further addressed in this context.

Padilla also contend the indictment was not a valid basis for his prosecution because it was terminated on October 19, 1995. In support of this claim, Petitioner provides a print out from the records of the Austin Municipal Court System. The print out was apparently provided to him in answer to his inquiry regarding obtaining copies of police/incident reports filed against him. The print out for case number 944643 reflects a "filed date" of November 4, 1994 and a "terminated date" of October 19, 1995. (Pet. Ex. 6 at E28). Padilla concludes this print out establishes the indictment underlying his prosecution was terminated on October 19, 1995.

The undersigned, however, disagrees for several reasons. First, Petitioner has not provided any authentication of the print out. *See* Fed. R. Evid. 901(a) (proponent of evidence must provide authentication as condition precedent to admission); *Enriquez v. Procunier*, 752 F.2d 111, 115 (5th Cir. 1984) (unauthenticated evidence properly rejected by trial court and habeas court and could not establish basis for relief). Nor has Padilla provided any material which explains the information on the print out. The print out is not so clear on its face as to lead inescapably to the conclusion

that the "terminated date" refers to termination of the indictment against Petitioner, rather than the termination of an investigation, or other unrelated matter.

Moreover, Padilla has not stated a cognizable double jeopardy violation. The Double Jeopardy Clause of the United States Constitution prohibits: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); *Doyle v. Johnson*, 235 F.3d 956, 958 (5th Cir. 2000). The threshold concern in each is whether jeopardy has attached. *See Serfass v. United States*, 420 U.S. 377, 393, 95 S. Ct. 1055, 1065 (1975) (it is fundamental that accused must suffer jeopardy before he can suffer double jeopardy). Petitioner was not prosecuted on the indictment prior to the date he contends the indictment was terminated. Accordingly, jeopardy did not attach and Padilla's trial in 2002 could not be a violation of his protection against double jeopardy. *See Crist v. Bretz*, 437 U.S. 28, 35, 98 S. Ct. 2156, 2160 (1978) (jeopardy attaches when jury is empaneled and sworn); *Briggs v. Procunier*, 764 F.2d 368, 372 (5th Cir.1985) (jeopardy attaches in criminal jury trials immediately after jury is sworn).

Padilla further argues his eventual prosecution fell outside the statute of limitations. He points out the notice of indictment, issued June 2000, was issued more than five years after the offense allegedly occurred. Petitioner thus concludes the underlying indictment must be invalid.

Padilla has not pointed to any legal authority for the proposition that the notice of indictment, rather than the indictment itself, must be handed down within the statutory limitations period. However, even if the Court accepts the legal validity of this argument, Petitioner's claim of a violation of the statute of limitations fails for one simple reason – the statute of limitations for both offenses of which he was convicted are at least ten years. *See* Tex. Code Crim. Proc. Ann. art. 12.01(5)(B) (Vernon Supp. 2005) (limitations for aggravated sexual assault of a child under fourteen years of age and for indecency with child by contact expires ten years after victim's

eighteenth birthday); *Cabral v. State*, 170 S.W.3d 761, 765 (Tex. App.–Fort Worth 2005, pet. ref'd) (same). Petitioner has not shown he was entitled to relief based on his claim attacking the validity of the indictment.

**C. Speedy Trial (Ground 5, 8-9).**

Petitioner next claims his right to a speedy trial was violated by the various delays between indictment and his trial in 2002. Padilla raised this claim in his direct appeal. In addressing this issue the state appellate court cited the relevant constitutional provisions. The appellate court further set forth the applicable four part test: "the length of the delay, the reason for the delay, the defendant's assertion of his speedy trial right, and the prejudice to the defendant resulting from the delay." *Padilla*, 2003 WL 21401256, at *2 (citing *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972)).

The appellate court found the length of the delay weighed heavily against the state, but the reason for the delay, a lack of communication, was not deliberate and did not weigh so heavily against the state. *Id*. The appellate court then found Padilla had made no effort prior to his arrest in May 2000 to determine the status of the sexual assault charge and concluded his inaction weighed heavily against a finding of a speedy trial violation. *Id*. at *3. The appellate court further noted Padilla had wholly failed to articulate any impairment to his defense as a result of the delay, rather complaining only that he was subject to more onerous conditions of confinement as a result of his status as an sexual offender, and found the lack of significant prejudice weighed against a finding of a constitutional violation. *Id*. Finally, the appellate court balanced all of these factors, and concluded Padilla had not established a speedy trial violation. *Id*. at *4.

Padilla argues the state court's decision failed to adequately consider testimony concerning the reasons for the delay in prosecuting him. According to Petitioner, witnesses at the trial court testified entries were made in various databases and then deleted, and it was clear law

enforcement authorities knew where he was from various records establishing he was in jail for portions of the time at issue. (Pet. at 59-63, 77-79; Pet. Reply at 10-11). He believes this evidence is sufficient to establish bad faith on the part of the state.

The state appellate court, however, implicitly acknowledged this testimony, finding "there is no evidence of a valid reason for the five-year delay between appellant's indictment and his arrest on the capias. The delay appears to have been the result of official negligence." *Padilla*, 2003 WL 21401256, at *2. The undersigned does not find the appellate court's conclusion to be an unreasonable determination of the facts in light of the evidence presented in the state court, and thus not contrary to the AEDPA standard of review.

Petitioner also contends the state court did not properly weigh the period of delay, his failure to inquire into the status of the charges pending against him, and the harm he suffered as a result of the delay. However, his support for this contention consists of facts either clearly considered by the state appellate court in addressing his speedy trial claim, or conclusory allegations for which he provides no evidentiary support. (Pet. at 59-76; Pet. Reply at 13-14).[3] These arguments, thus, amount to little more than a disagreement with the state court's conclusions and do not merit serious consideration. *See Young v. Dretke*, 356 F.3d 616, 631 (5th Cir. 2004) (habeas court need not directly engage in *Barker* inquiry where state appellate court undertook thorough analysis, and concluded petitioner had failed to make showing of prejudice). Because Padilla has not shown the decision of the state appellate court was contrary to, or involved an unreasonable application of, clearly established federal law, he is not entitled to relief on this basis. *See* 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 405-06, 120 S. Ct. at 1520.

---

[3] The undersigned also notes the apparent inconsistency between Padilla's claim that he was unaware of the charges against him, and his assertion that the conditions of his confinement were rendered more onerous because of his status as an alleged sex offender.

## D.  Defects in State Records (Ground Six)

Padilla next complains the state records are terminally defective.  In support, he points out the number at the top of his indictment and the cause number contained in the arrest warrant and notice of indictment are not the same.[4]  Petitioner does not cite, and the Court is unaware of, any constitutional provision or statute requiring the assignment of identical numbers to a state indictment and the state criminal case.  Accordingly, this ground for relief should be denied.

## E.  Official Misconduct (Grounds 11-12)

In several related grounds, Petitioner accuses various prosecutors, court personnel and the trial judge of conspiring together to engage in official misconduct.  Succinctly put, he claims these officials acted together to alter his records, and to delay his prosecution, although they knew where he was and could have prosecuted him sooner.  Padilla essentially contends, because errors were made, the persons making them acted knowingly and in concert.  Not surprisingly, however, he is not able to provide any evidentiary support for this assertion.  Moreover, in considering Petitioner's speedy trial claim, both the state appellate court and the trial court found the errors were the result of negligence, not concerted, knowing, activity.

Padilla further accuses law enforcement personnel of knowingly charging him with an offense for which there was insufficient evidence.  The validity of this assertion is clearly undercut by Petitioner's conviction following a jury trial, leading inescapably to the conclusion that the jury found sufficient evidence to convict Padilla.  This claim is, accordingly, without merit and should be denied.

---

Petitioner also complains that records concerning his confinement status and the existence of warrants for his arrest are inconsistent.  Although Padilla asserts broadly that this deficiency should have been raised by his counsel or the trial court, and that this failure violated his constitutional rights, he does not clearly identify how he believes he was harmed by these inconsistencies.  To the degree he claims these inconsistencies led to a delay in his prosecution, the undersigned has already considered, and rejected, this argument in addressing Padilla's speedy trial argument.

**F. Ineffective Assistance of Counsel (Grounds 10, 21)**

Petitioner further asserts he received ineffective assistance of counsel.  He contends (1) he was deprived of the assistance of counsel during several key periods of time; (2) his appointed counsel did not obtain rulings on various motions; (3) counsel did not adequately pursue various legal issues; and (4) he was forced to accept lawyers he did not approve as his appointed counsel.

**1.    Applicable Law**

To establish an ineffective assistance of counsel claim, Padilla must meet the two-prong test under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).  He must demonstrate both that: (1) his counsel's performance was deficient, including "errors so serious that counsel was not functioning as the 'counsel' guaranteed defendant by the Sixth Amendment"; and (2) his counsel's  "deficient performance prejudiced the defense."  *Id*. at 687, 104 S. Ct. at 2064; *United States v. Walker*, 68 F.3d 931, 933 (5th Cir. 1995).

To establish deficient performance, Padilla must show that his counsel's acts were not "reasonable in light of all the circumstances," and he must overcome the "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  *See United States v. Haese*, 162 F.3d 359, 364 (5th Cir. 1998) (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064); *United States v. Samuels*, 59 F.3d 526, 529 (5th Cir. 1995)  (strong showing required by defendant to place counsel's conduct outside wide range of reasonable professional assistance).  To demonstrate prejudice, he must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Haese*, 162 F.3d at 364 (citing *Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998)); *United States v. Kinsey*, 917 F.2d 181, 183 (5th Cir. 1990).

Padilla must show more than that a different result would have been "possible."  *Cockrum v. Johnson*, 119 F.3d 297, 302 (5th Cir. 1997).  He must also show the prejudice rendered the

proceeding "fundamentally unfair or unreliable." *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997). When a defendant fails to meet either requirement of the *Strickland* test, his ineffective assistance of counsel claim is defeated. *See Belyeu v. Scott*, 67 F.3d 535, 538 (5th Cir. 1996); *United States v. Gaudet*, 81 F.3d 585, 592 (5th Cir. 1993). The Fifth Circuit "has also made clear that counsel is not required to make futile motions or objections." *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). Likewise, counsel is not "deficient for failing to press a frivolous point." *Sones v. Hargett*, 61 F.3d 410, 415 (5th Cir. 1995).

### 2.    Discussion

Petitioner first asserts he was deprived the assistance of counsel at two key points. The first period was between the date of the offense and his arrest on the indictment in early 2000. However, as noted above, Petitioner asserts he was unaware of the criminal charges during this period of time. Moreover, there is no indication he asserted any right to counsel during that period of time. Absent an invocation of his right to counsel, Petitioner cannot argue he was improperly denied counsel. *See Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 1884-85 (1981) (once accused asserts right to counsel, all interrogation must cease); *Holloway v. State*, 780 S.W.2d 787, 793 (Tex. Crim. App. 1989) (Fifth Amendment entitles defendant to assistance of counsel if invoked).

The second period was following his release on bond in November 2000, until he returned to custody in May 2001. (Pet. at 82-83 & Ex. 31). Padilla asserts the sole reason his previously appointed counsel was no longer representing him was because he was able to obtain his release on bond. Petitioner argues this is clearly contrary to Texas law. *See* Tex. Code Crim. P. art. 26.04(m) (Vernon 1995) (count may not consider whether defendant has posted bond in determining indigency for purpose of appointing counsel). As a result, Petitioner contends his rights were not protected, and he was forced to appear at a bond hearing without representation.

(Pet. at 95-96). According to Padilla, when he asked for appointed counsel, the trial judge declined, stated his family should have used the bond money to hire an attorney, and threatened him with incarceration. (*Id*. at 91). Notably, however, Petitioner fails to provide any evidentiary support for these allegations. The only citation he provides is to a summary of events by his appointed attorney, confirming Padilla was without appointed counsel during that period. (*Id*., Ex. 78 at E458). These conclusory allegations are insufficient to clearly establish either that Padilla requested an appointed attorney or that his request was improperly denied.

Padilla further complains Ladis Slavik ("Slavik"), the counsel appointed to represent him following his arrest in May 2000, was not effective. Although he complains Slavik's representation was not sufficiently diligent, Petitioner concedes Slavik filed multiple pretrial motions. (*Id*. at 91-92). Padilla's complaint of lack of diligence is based on his perception that the motions were not timely addressed by the trial judge. He has not, however, established any way in which counsel could have obtained a more prompt ruling.

Padilla next alleges Slavik was ineffective because he failed to raise Petitioner's speedy trial claim, and the issues related to that claim, failed to attack the defects in the indictment and the state records, and failed to complain concerning the withdrawal of his appointment. (*Id*. at 92-93). As to the first two alleged deficiencies cited by Padilla, the undersigned has already found the speedy trial claim and the claim concerning defects in the indictment and state records were without merit. Nor has Petitioner shown the withdrawal of Slavik's appointment was improper. Slavik could not, therefore, be found ineffective for failing to raise these arguments. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (counsel not required to make frivolous objections or advance futile arguments).

Petitioner also complains he was forced to accept Larry Sauer ("Sauer") as his appointed counsel in May 2000, despite his clearly expressed opposition. (Pet. at 97). As Padilla himself acknowledges, however, "[a] defendant is not entitled to counsel of his choice." (*Id*. at 88).

13

Petitioner also complains generally that Sauer failed to raise numerous issues, namely those raised in this habeas action. (*Id*. at 97, 173). Contrary to Padilla's cursory assertion, some of those issues were raised both prior to trial and on appeal. Further, as noted above, Petitioner has failed to establish the merits of any of those issues. He has not, therefore, established Sauer was ineffective.

Padilla additionally claims he was inadequately represented by Nancy Hohengarten ("Hohengarten") in January 2002, despite the fact she was never officially appointed to represent him. He contends Hohengarten appeared at the trial court hearing held on his speedy trial claim, but did not tell him she was appointed. Padilla further asserts Hohengarten did not discuss his case with him, refused to petition the trial court to hold hearings on pending motions, did not conduct an independent investigation and did not remove herself from the proceedings when he asked her to. (*Id*. at 98-99). He fails, however, to identify any issues which he wished to discuss, the pending motions he believes merited a hearing, the matters Hohengarten should have investigated, or how he was harmed by her failure to leave. The conclusory nature of these allegations is alone sufficient to doom them. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (vague references to sixth amendment rights are insufficient to raise constitutional issue); *Barnard v. Collins*, 958 F.2d 634, 642 n.11 (5th Cir. 1992) (habeas petitioner must show how alleged errors and omissions were constitutionally deficient); *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (mere conclusory allegations on critical issue insufficient to raise constitutional issue).

Padilla additionally complains his defense counsel failed to raise several issues during trial, including the lack of investigation by the police, the improper "chain of custody" showing concerning physical evidence and the failure to test physical evidence. (Pet. at 175-78). As to the first issue, Petitioner has not shown any evidence which was overlooked by the police or how additional investigation would have otherwise benefitted him. Thus, he has not shown any prejudice from

counsel's failure to raise this issue. As to the second and third issues, the undersigned concludes below Padilla has failed to show any harm relating to any purportedly improper admission of physical evidence. Again, this failure to show prejudice dooms this claim for relief.

### G. State Habeas Infirmities (Grounds 13-15, 23-24)

Petitioner next maintains he was denied a timely and proper ruling on his state habeas applications and numerous procedural errors were committed during those habeas proceedings. The Fifth Circuit has repeatedly held defects in a state habeas proceeding are not cognizable grounds for relief under 28 U.S.C. § 2254. *See Rudd v. Johnson*, 256 F.3d 317, 319-20 (5th Cir. 2001) (citing long line of cases dictating that infirmities in state habeas proceeding do not warrant federal habeas relief). Accordingly, this ground for relief should be overruled.

### H. Evidentiary Admissions (Grounds 16-19)

Petitioner further raises several challenges concerning the admission of evidence. However, federal habeas relief is only available to correct errors of constitutional dimension. 28 U.S.C. § 2254(a); *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983). State law issues, such as improper evidentiary rulings and the misapplication of state procedural rules, are not cognizable in a federal habeas proceeding unless the rulings were "so extreme as to result in a denial of a constitutionally fair [trial]." *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999).

Padilla first asserts lines of questioning were raised during voir dire which would have been inadmissible under the state's motion in limine. He contends the trial court's eventual grant of the motion was thus prejudicial to his counsel's efforts during trial. However, as Petitioner concedes, no objections were raised by either the state or his counsel to any violations of the trial court's ruling, thus no errors were preserved. (Pet. at 119-20). Nor has Padilla specifically identified evidence or questions which were purportedly improper, instead citing generally to numerous transcript pages. (*Id.* at 121). He has not, therefore, established the trial court's ruling on the

motion in limine was so extreme as to deny him a fair trial.

Petitioner also objects to what he characterizes as the improper admission of business records. The records at issue are hospital records of the victim, dated October 22-23, 1994. These records were accompanied by a business records affidavit from the custodian of the records. (Trial Tr. Vol. 12 St. Ex. 5).

Padilla first argues the admission of these records was improper because the creator of the records was not shown to be unavailable or unable to testify. Petitioner apparently is arguing the admission of these records violated the prohibition against hearsay. However, the admission of business records is governed by Rule 803 of the Texas Rules of Evidence. This rule permits, as an exception to the general prohibition against hearsay, the introduction of properly authenticated business records "even though the declarant is unavailable." TEX. R. EVID. 803(6).

Padilla further maintains testimony concerning those records was improper hearsay. Specifically, he cites the testimony of a physician, Dr. Beth Nauert ("Nauert"). Dr. Nauert had examined the victim in August 1994. Dr. Nauert testified concerning the October 1994 hospital records, contrasting her August examination results with the later results, and rendering her opinion as to the cause of the medical findings noted in the records. (Trial Tr. Vol. 7 at 120-37). This type of testimony is clearly authorized under the rules governing expert testimony. *See* TEX. R. EVID. 702-05 (setting parameters for admission of expert testimony); *Chance v. Chance*, 911 S.W.2d 40, 51 (Tex. App.–Beaumont 1995, writ denied) (admission of doctor's testimony, including reliance on other medical records as well as results of own examination permissible under rules governing expert testimony). Moreover, Petitioner's counsel was permitted to, and did, vigorously cross-examine Dr. Nauert as to the contents of the medical records and the propriety of the conclusions drawn from the records, including the potential effects of a prior alleged sexual assault. (Trial Tr. Vol. 7 at 127-36). Any harm to Padilla was thus mitigated.

Petitioner additionally attacks the admission of testimony from Tracy Chance ("Chance")

16

the social worker who interviewed the victim. (*Id.* at 38-46). He asserts Chance's testimony as to statements made by the victim during the interview was objectionable hearsay. However, Texas law provides a hearsay exception for the testimony of an outcry witness. *See Kittelson v. Dretke*, 426 F.3d 306, 309 n.4 (5th Cir. 2005) (discussing admission of testimony of case worker concerning interview with child sexual abuse victim under TEX. CRIM. PRO. art. 38.072). Moreover, because the victim appeared at trial and was subject to cross-examination by counsel for Petitioner, the essential concerns implicated by the admission of hearsay testimony were mitigated. *See Carson v.. Collins*, 993 F.2d 461, 464 (5th Cir. 1993) (introduction of out-of-court statements does not violate Confrontation Clause where declarant testifies at trial); *Story v. Collins*, 920 F.2d 1247, 1255 (5th Cir.1991) (admission of videotaped statement not violative of Confrontation Clause where interviewee called as witness).

   Petitioner asserts the statutory exception permitting the testimony of an outcry witness is limited to victims under eighteen. According to Padilla, because the victim was not under eighteen at the time of trial, testimony beyond that of the victim was merely improper bolstering. It appears, however, that Texas courts evaluate the applicability of the statutory exception for outcry statements in terms of the age of the victim at the time the outcry was made, not the victim's age at the time of trial. *See Harvey v. State*, 123 S.W.3d 623, 628 (Tex. App.–Texarkana 2003, pet. ref'd) (noting cases in which complainant was thirteen years old or older at time of trial, but outcry statement was made while victim was legally still a minor).

   Padilla additionally objects to the admission of outcry evidence because the requirements of the applicable statute were not fully complied with. He contends his attorney was not properly notified and the trial court did not conduct a separate hearing on the admission of the outcry statement, contrary to the clear requirements of the statute. However, a federal court may grant habeas relief only when "the violation of the state's evidentiary rules results in a denial of fundamental fairness." *Herrera v. Collins,* 904 F.2d 944, 949 (5th Cir. 1990). *See also Givens v.*

*Cockrell*, 265 F.3d 306, 308 (5th Cir. 2001) (state court's erroneous admission of prejudicial evidence justifies habeas relief only when evidence is crucial, critical, and highly significant); *Hafdahl v. Johnson*, 251 F.3d 528, 536 (5th Cir. 2001) (habeas relief based on wrongful admission of extraneous offense evidence merited only if error is of such magnitude it resulted in "fundamental unfairness").

Here, Petitioner himself admits his first appointed counsel, Mr. Slavik, received notice of the state's intent to admit the outcry statement. (Pet. at 134 & Ex. 66). Although it is not clear from the record whether a hearing was held prior to trial on the admissibility of the statement, Padilla has not shown his counsel requested a hearing or objected to the introduction of the statement. He cannot now complain of the lack of statutory compliance. *See Cates v. State*, 72 S.W.3d 681, 698-99 (Tex. App.–Tyler 2001, no pet.) (failure to request hearing or object to admission of outcry statement waived any failure to hold pretrial hearing); *Rodriguez v. State*, 762 S.W.2d 727, 731 (Tex. App.–San Antonio 1988), pet. dism'd as improvidently granted, 815 S.W.2d 666 (Tex. Crim. App. 1991). Further, absent a showing by Petitioner that the result of a pretrial hearing would have been exclusion of the statement, he has not established he is entitled to federal habeas relief on this basis. *See Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.–Houston [1st Dist.] 2002, pet. ref'd) (any error in admitting outcry witness's testimony harmless where evidence otherwise properly admitted).

Padilla next complains a variety of physical evidence was admitted despite a lack of showing of proper chain of custody. Specifically, his complaint centers around testimony concerning a rape kit, the victim's clothing, and a bed sheet. Petitioner, however, concedes the state properly showed both the beginning and the end of the chain of custody for those items. (Pet. at 139; Trial Tr. Vol. 7 ay 100,04, 152-56, 158-68). *See Gallegos v. State*, 776 S.W.2d 312, 315-16 (Tex. App.–Houston [14th Dist.] 1989, no pet.) (where State shows beginning and end of chain of custody, any gaps in between go to weight rather than admissibility). His objection is apparently

that the evidence was at some point removed from refrigeration, possibly altering the validity of the testing performed. The testimony concerning the physical evidence, however, was in no way inculpatory to Padilla. Rather, the expert, Gary Molina, testified because he was unable to tie any semen stains to the victim, he conducted no further testing. (Trial Tr. Vol. 7 at 162-67). Petitioner has not, therefore, shown any harm from the admission of possibly tainted evidence and is not entitled to relief. *See Brecht v. Abrahamson*, 507 U.S. 619, 630, 113 S. Ct. 1710, 1717 (1993) ("[T]here may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless").

Padilla also generally contends the state prevented his counsel from obtaining exculpatory evidence. He does not, however, specifically identify any missing evidence which is in the possession of the state. Rather, Petitioner contends had DNA testing been performed he would have been exonerated, and because he does not suffer from any sexually transmitted disease, the victim could not have contracted any such disease from him.[5] Not surprisingly, Padilla presents no proof of the existence of this evidence, and certainly no proof any such evidence is in the custody of the state. He is not, therefore, entitled to relief on this ground.

## I. Jury Charge (Ground 20)

Petitioner further contends the jury charge and verdict form were incorrect because they did not reflect the trial court's grant of a directed verdict as to one of the charges against him. Count I, Paragraph I of the indictment charged Padilla with penetration of the female sexual organ of the victim with his male sexual organ. Count I, Paragraph II of the indictment charged Padilla with penetration of the female sexual organ of the victim with his finger. Count I, Paragraph III of the indictment charged Padilla with causing the sexual organ of the victim to contact his sexual

---

Dr. Nauert testified the victim showed signs of a sexually transmitted disease in the October 1994 examination. (Trial Tr. Vol. 7 at 120-37).

organ. Count II, Paragraph I of the indictment charged Padilla with engaging in sexual contact by contacting the breast of the victim. (Clerk's Rec. at 3-5).

Petitioner correctly points out his counsel moved for a directed verdict following the close of evidence. Counsel objected to the portion of the indictment charging Padilla with penetration of the sexual organ of the victim with his finger. The prosecutor did not object. Accordingly, the trial judge granted the motion and stated the jury would not be charged on the portion of the indictment alleging penetration by the finger of Padilla. (Trial Tr. Vol. 7 at 186-89).

The jury was then charged, in pertinent part:

> if you believe from the evidence beyond a reasonable doubt that the defendant, Guadalupe Padilla, on or about the 22nd day of October, 1994, in the County of Travis, and State of Texas, as alleged in the indictment, did then and there knowingly or intentionally cause the penetration of the female sexual organ of [the victim], a child younger than 14 years of age and not his spouse, by the male sexual organ of Guadalupe Padilla, or that Guadalupe Padilla did then and there knowingly or intentionally cause the sexual organ of [the victim], a child younger than 14 years of age and not his spouse, to contact the sexual organ of the said Guadalupe Padilla, you will find the defendant guilty of the offense of Aggravated Sexual Assault of a Child and so say by your verdict, but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant of the offense of Aggravated Sexual Assault of a Child and say by your verdict "Not Guilty." In any event, you will proceed to consider the charge in Count No. 2 of the indictment as set out below.

> Now, bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, Guadalupe Padilla, on or about the 22nd day of October, 1994, in the County of Travis, and State of Texas, as alleged in the indictment, did then and there with the intent to arouse or gratify his sexual desire, knowingly or intentionally engage in sexual conduct by touching the breast of [the victim], a child younger than 17 years of age and not his spouse, you will find the defendant guilty of the offense of Indecency With a Child and so say by your verdict, but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant of the offense of Indecency With a Child and say by your verdict "Not Guilty."

(Clerk's Rec. at 133-34). The verdict form asked the jury to determine if it found Petitioner guilty or not guilty of the offense of Aggravated Sexual Assault of a Child as alleged in Count No. 1 of the indictment, and separately asked the jury to determine if it found Petitioner guilty or not guilty of the offense of Indecency With a Child as alleged in Count No. 2 of the indictment. (*Id.* at 139-

40).

Padilla now contends the jury charge and verdict form were defective because they failed to reflect the trial court's ruling on the motion for directed verdict. Improper jury instructions in state criminal trials rarely form the basis for federal habeas relief. *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002). When reviewing jury instructions in federal habeas, "[t]he only question ... is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Hughes v. Johnson*, 191 F.3d 607, 627 (5th Cir. 1999) (quoting *Estelle v. McGuire,* 502 U.S. 62, 72, 112 S. Ct. 475, 482 (1991)).

Petitioner's argument appears to be based on a misunderstanding of both the indictment and the two offenses he was charged with committing. The Texas Court of Criminal Appeals has made clear the statute criminalizing aggravated sexual assault is a conduct-oriented statute proscribing several different types of conduct. *Vick v. State*, 991 S.W.2d 830, 832 (Tex. Crim. App. 1999). Thus, an indictment may properly allege separate and distinct acts, despite the fact both are violations of a single statute. *Id.* at 833 (charging both penetration by defendant's sexual organ with child's female sexual organ and contact by defendant's mouth with child's sexual organ). Count I of the indictment, therefore, properly charged Petitioner with multiple forms of committing the same offense. The grant by the trial court of the directed verdict as to Paragraph II was properly recognized in the jury charge by omitting the alleged conduct of penetration by Padilla's finger of the victim's sexual organ.

Petitioner also contends the trial court's grant of a directed verdict as to Count I, Paragraph II should have resulted in dismissal of Count II because the offenses charged share the same elements. Indecency with a child can be a lesser included offense of aggravated sexual assault of a child. *See Cunningham v. State*, 726 S.W.2d 151, 155 (Tex. Crim. App. 1987) (failure to prove penetration of mouth of child by sex organ of defendant resulted in conviction for indecency with a child). The test is whether the "convictions are based on the same act." *Barnes v. State*, 165

S.W.3d 75, 88 (Tex. App.–Austin 2005, no pet.). *See also Elder v. State*, 132 S.W.3d 20, 24-25 (Tex. App.–Fort Worth 2004, pet. ref'd) (conviction based on "same acts" barred by double jeopardy). Here, the two counts of the indictment clearly allege two distinct offenses which cannot be subsumed within each other. Count I alleges penetration or contact of the victim's sexual organ, whereas Count II alleges contact of the victim's breast. Thus, Petitioner has failed to show the charge and verdict form were defective. *See Hanson v. State*, 180 S.W.3d 726, 732-33 (Tex. App.–Waco 2005, no pet.) (upholding convictions for both aggravated sexual assault of a child and indecency with a child occurring during "a single sexual encounter" where acts alleged were clearly distinct). He is not, therefore, entitled to habeas relief on this basis.

## J. Jury Argument (Ground 22)

Petitioner next contends the prosecutor engaged in improper jury argument. An improper jury argument rarely justifies federal habeas relief. *See Darden v. Wainwright,* 477 U.S. 168, 181, 106 S. Ct. 2464, 2471 (1986) (standard for granting habeas relief on basis of prosecutorial misconduct is narrow one of due process). A petitioner must show the argument was so prejudicial it denied him a fair trial. *Donnelly v. DeCristoforo*, 416 U.S. 637, 642- 43, 94 S. Ct. 1868, 1871 (1974); *Kirkpatrick v. Blackburn,* 777 F.2d 272, 281 (5th Cir. 1985). A trial is fundamentally unfair if the petitioner would not have been convicted but for the prosecutor's persistent and improper remarks. *Darden,* 477 U.S. at 181, 106 S. Ct. at 2471; *Rushing v. Butler,* 868 F.2d 800, 807 (5th Cir. 1989). *See also United States v. Johnston*, 127 F.3d 380, 398 (5th Cir. 1997) (in examining effect of prosecutor's impermissible comments court considers magnitude of prejudicial effect of remark, efficacy of any cautionary instruction and strength of evidence of defendant's guilt).

During jury argument the prosecutor referenced the defendant's conduct after the return of the victim's mother to the apartment on the night of the offense. The prosecutor described the defendant's conduct thusly: "He bolts. He runs. He takes a cab. He goes and catches a bus out

of town.  There is a verse in the Old Testament of the Bible that says the guilty flee while the righteous stand still."  (Trial Tr. Vol. 8 at 31).

.According to Padilla, this reference to the Bible violated the separation of church and state embodied in the First Amendment and was thus per se a constitutional violation.  Not surprisingly, Petitioner does not cite any case law in support of this argument.  However, a variety of courts have declined to find Biblical references in jury argument sufficient to render a trial fundamentally unfair. *See Billings v. Polk*,  441 F.3d 238, 251 (4th Cir. 2006) (argument of prosecutor invoking Bible did not violate due process where evidence sufficient, and jury instructed not to consider argument as evidence); *Coe v. Bell*, 161 F.3d 320, 351 (6th Cir. 1998) (prosecutor's invocation of Bible, which included using the phrase "[w]hosoever sheddeth man's blood, by man shall his blood be shed," did not "so taint[ ] the proceedings that they constitute[d] reversible error"); *Mahaffey v. Schomig*, 294 F.3d 907, 920 (7th Cir. 2002) (petitioner not entitled to relief based on prosecutor's biblical reference where he failed to demonstrate prejudice).  *See also Ward v. Dretke*, 420 F.3d 479, 500 (5th Cir. 2005) (counsel's failure to object to prosecutor's reference to judgment by biblical standards of justice may have been deficient, but habeas petitioner not entitled to relief based on failure to show prejudice resulting from argument).  Accordingly, Padilla has not shown he is entitled to habeas relief on this ground.

## VI.  RECOMMENDATION

The Magistrate Court recommends that the District Court **DENY** Petitioner's Application for Habeas Corpus under 28 U.S.C. § 2254 and further recommends all other pending motions should be terminated.

## VII.  WARNING

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are

being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(*en banc*).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 24th day of August, 2006.

_____

ROBERT PITMAN
UNITED STATES MAGISTRATE JUDGE